TIMOTHY DONOVAN v. JAMES DWYER.

*Constructive mortgage.*

A contract purchaser of land sold portions of it to certain persons who paid him in full for their parcels. As he, however, did not pay the amount due on the original contract, it became necessary for them to pay it themselves in order to save their purchases. To secure repayment from their grantor they took an assignment of his contract rights in so much of the property as he had retained, and he was to have five years in which to make payment, and when he did so, he was to receive a reconveyance. One of the grantees, claiming to have paid his own share and that of his grantor, caused the contract purchaser to be ousted and his rights cut off, and he himself appropriated the income from his share of the property. *Held* in a bill for an accounting filed against this grantee by the other, that complainant was also entitled to the benefit of the security furnished by the assignment to them of the contract purchaser's interest.

Appeal from Marquette. (Grant, J.) April 30.—Sept. 29.

BILL to compel conveyance. Complainant appeals. Reversed.

*F. O. Clark* for complainant.

*W. P. Healy* for defendant.

SHERWOOD, J. This is an appeal from the circuit court for the county of Marquette, in chancery. On the 1st day of May, 1868, John Crowley, of Marquette, purchased by contract of the Cleveland Iron Mining Company, for the consideration of $5250, one lot lying on the north-east corner of First and Superior streets, being thirty-five feet on Front street, in the city of Marquette; and on the 16th of April, 1868, Harrison W. Jackson purchased, by contract, of the same company a lot next adjoining on the south, lying thirty feet on Front street, agreeing to pay therefor $3600. Soon after making this purchase, Jackson sold his interest in his contract to said John Crowley, thus making the total price of Crowley's purchase of sixty-five feet on Front street the

sum of $8850. Crowley divided these two lots into three, fronting on Front street. Commencing at Superior street, and going south, he made the first lot twenty feet, the second twenty-two feet, and the third twenty-three feet, wide. Crowley erected a two-story building, at a cost of about $8000, on the corner lot, and on the lot next south he built a brick building, and in 1871 he sold the same, with the improvements thereon, to Timothy Donovan, the complainant, for the sum of $6000; and the lot next south of the Donovan lot Crowley about the same time sold to James Dwyer, the defendant, with the improvements thereon, for the sum of $3800. Peter White, of Marquette, was the agent of the Cleveland Iron Mining Company for the sale of said lots, and it appears from his minutes that on the 25th day of March, 1879, there was due upon the Crowley and Jackson contracts $6405.46. The complainant and defendant before this time had both paid Crowley in full the purchase price of their lots, and each was entitled to his deed. They, however, soon discovered that Crowley had not paid the company for the land they had purchased, and there being some question whether he would be able to do so, there was a fair prospect that the complainant and defendant might be obliged to pay the deficiency in order to save the title to their own property, and on the 2d day of September, 1878, they took an assignment to themselves from Crowley of his contract with the company for the corner lot, which, although absolute in its terms, was intended for their protection and indemnity in case they were obliged to make any payments in securing their title. Crowley, at the time of making said assignment, took back from the parties to this suit a written agreement for a reconveyance of the property to him at any time within five years when the parties should be fully reimbursed in the amount they might really be obliged to pay, with interest at ten per cent. After Donovan and defendant took the assignment of the Crowley contract, as above stated, Donovan paid to White, for the Iron Mining Company, what he, Donovan, called his pro rata share of the Crowley indebtedness upon his lot of twenty-two feet frontage, the sum of

about $2000, and received a deed of his lot on the 3d day of April, 1879, from the Iron Mining Company. Dwyer also paid White, in money and by note, $5006, and not only took the Cleveland Iron Company's deed of his lot purchased of Crowley, but also a deed for the corner lot occupied by Crowley, running to himself. These deeds also appear to have been given on the 3d day of April, 1879, and it is claimed by the company, were made under its contract with Crowley which he had assigned to Donovan and Dwyer. This deed, however, contains a clause recognizing Crowley and any rights he might have in the lot in these words : " This deed is made and delivered subject to the legal rights of John Crowley under this contract, with the party of the first part hereunto, to the tract of land described herein, if any such right exist, be the same more or less."

The complainant claims in his bill of complaint "that, without the consent of Donovan, Dwyer had entered into an agreement with White for himself and for Donovan, after they obtained the assignment of September 2, 1878, and had given the five-year contract back to Crowley, referred to above, whereby it was agreed between Dwyer and the Cleveland Iron Mining Company that it should proceed to forfeit the contracts of May 1, 1868, and April 16, 1868, as against Crowley, at the same time carrying out the arrangement with Dwyer and Donovan to convey to them upon the payment of the indebtedness of Crowley to the Cleveland Iron Mining Company; that in accordance with the previous agreement by defendant with White, the Cleveland Iron Mining Company, through Peter White, filed a complaint before James E. Dalliba," in a summary proceeding to obtain possession of said corner lot, and failing in this proceeding, renewed the same before the judge of probate of Marquette county on the 16th day of August, 1879, and on the 25th day of the same month succeeded in obtaining judgment of ouster against Crowley and for possession by Dwyer ; that these proceedings were had against the consent of Donovan, who claimed they were contrary to the contract he and Dwyer had made with Crowley. It also appears

from the testimony of White that he knew nothing of the contract existing between the complainant and defendant and Mr. Crowley, relating to the lot on the corner occupied by the latter.

The complainant further claims that defendant, desiring to avoid the contract of the parties with Crowley to recovery to him, and to cut him off beyond all rights of redemption in the property, endeavored to get Donovan to consent to the bargain claimed with the Cleveland Iron Mining Company that it cancel these contracts, and to oust Crowley; that this Donovan refused to do; that after the assignment was made, Dwyer asked him if he wanted the corner lot; that Donovan told him he did. Dwyer then said he would pay him. Donovan replied that he did not want to take the lot from Crowley; that all he wanted was his money; that this conversation was not a great while after the assignment was made, and was the substance of all the talk had between the parties, as to taking the corner lot; that Dwyer soon after, without asking Donovan to pay his share of what remained due upon the contract for the corner lot, paid the same in full, and took the deed running to himself, procured the cancellation of the contract and the ejectment proceedings, and claims that Crowley's rights are forfeited, and complainant has surrendered his to defendant voluntarily that he had as security for the moneys which he had advanced, or for any other claim, and has for several years been taking all the rents, which have been large, and refuses to recognize complainant's alleged rights in any form, and that the property is now worth $9000. Complainant asks for an accounting, and that he be decreed the owner of one-half of the corner lot, free and clear from all incumbrance, and have a deed from defendant accordingly.

The answer of defendant admits many of the material facts, and then says that, sometime after the parties discovered that Crowley had not paid up for the land, " complainant and defendant *went together to Peter White, agent for said Cleveland Iron Mining Company, to endeavor to get an extension of time for said Crowley and themselves ;* but

the company would wait no longer, having waited eleven years, and it was finally agreed that the company should *take steps to forfeit Crowley's interest, and to protect the rights of complainant and defendant so far as consistent with the rights of the Cleveland Iron Mining Company. This arrangement was made between Peter White, agent, and complainant and defendant.* Defendant avers that he took no steps in the matter at that time, nor thereafter, except with the knowledge and consent of said complainant, and made no private bargain whatever with said Cleveland Iron Mining Company, nor with Peter White, its agent. Crowley held all of said lands, which had a frontage of sixty-five feet on Front street, under two contracts; the corner included thirty-five feet and the inside thirty feet, and in contracting to sell to complainant and defendant, Crowley retained twenty feet on the corner. When complainant and defendant settled with the Cleveland Iron Mining Company, it was agreed that complainant should pay the company $1894 for his lot; that the defendant should pay $2000 for his twenty-three feet north of complainant's, and that the corner twenty feet should pay $2663.06 at that time, March 25, 1879. The complainant backed out of his agreement to take said corner jointly with defendant, and informed defendant and Peter White that he would have nothing to do with the corner whatever. Whereupon the defendant then agreed to take it, with the consent of complainant and Peter White, and on April 3, 1879, by the consent of all the parties in interest, deeds were executed to complainant for his twenty-two feet, and to defendant for his twenty-three feet, and also for the corner twenty feet; but as neither complainant nor defendant was then able to pay the purchase price, said deeds were not delivered for some time thereafter to either of them, but were held by Mr. White, agent, as aforesaid. That the complainant and defendant became the equitable owners of said described lots, to wit: The complainant of the twenty-two feet next to the corner, and the defendant of the twenty-three feet north of complainant, and also of the corner twenty feet occupied by said Crowley,

and on the 16th of August, 1879, proceedings were taken by said Cleveland Iron Mining Company, which still held the legal title, to extinguish the title of said Crowley, and judgment of restitution was rendered in said probate court, July 21, 1879, and a writ of restitution issued July 27, 1879, whereby said Crowley was ousted from the possession of said 'corner,' and this defendant put in possession thereof, all of which was well known to complainant, who made no objection thereto. The defendant avers that he took said deed of said 'corner' from the Cleveland Iron Mining Company for his own benefit, by the consent of complainant, who refused to have anything to do with it, and never offered to pay any of the purchase price thereof; that at that time business was very dull, and real estate was considered of little value in Marquette, but since then property has greatly increased in value, and complainant's claim is a mere after-thought, in which he is attempting to take advantage of defendant's expenditure of money on said premises."

The case was heard before Judge Grant at the Marquette circuit, who dismissed the complainant's bill, and he appeals to this Court.

The case is not free from complication and difficulties. The parties, up to the time they discovered that Crowley had neglected to pay the Cleveland Iron Mining Company the amount due upon his contract with the company, had no interest in common with each other in the premises; each had dealt separately and independently with Crowley, had paid up for their lots, and each was entitled to his deed, which Crowley could not then give. They then sought some way by which they could secure title to the property they had bought and fully paid for. This they could do but in one way. The company refused to convey to the parties unless they would assume to pay Crowley's full indebtedness to it upon his and the Jackson contracts, and this they could not do without advancing, in addition to what was owing the company by Crowley for their lots, also what he was owing for the corner lot; and the only security they could get of

Crowley in the event of their making such payment and advances for him was the corner lot, and this Mr. Crowley was willing they should have, provided they would agree to give him five years within which to reimburse them for the amount they should pay, and interest thereon, upon the receipt of which he was to receive a reconveyance of the property.

It appears, I think, from the testimony in the case, that this arrangement was entered into and a contract to that effect was made and signed by Crowley, Donovan and Dwyer, and thereupon Crowley transferred to them his interest in the contract he held for the corner lot. These instruments bear date the same day. Of course this contract between Crowley and the parties is entirely immaterial, except as it tends to show the true relation between the parties to the interest claimed by the complainant in his bill. There is but little difficulty with the case up to this point. It seems to be conceded that the complainant and defendant, by this arrangement, were to pay to the company the balance of the purchase money due from Crowley on both his and the Jackson contracts. This was what Peter White, as agent for this company, demanded before he would give either party a title to any part of the lots, and this Dwyer claims that he was ready and willing to do, but that Donovan was not willing to do, and would pay no portion thereof except a pro rata share to secure a deed for his own lot, and that he, Dwyer, was obliged to and did pay the full amount of the remainder, and took a deed for his lot, and at the same time took a deed running to himself for the corner lot, as his only means to obtain title to his lot and any security whatever for the advances he had made; Donovan absolutely refusing to do anything about it, surrendered his rights in the corner lot to Dwyer.

Mr. Donovan, however, substantially denies some of the facts claimed by Dwyer, and gives a different version of the matter. He says he never in any way surrendered his right in the contract for the corner lot to Dwyer, and never had any intention of doing so. He told him he did not want to

dispossess Crowley; that Dwyer wanted to dispossess Crowley, and offered to pay Donovan for his interest, and he refused to let him have it, saying Crowley was his friend, and he did not want to take the lot from him. He further says that Dwyer never asked him to pay anything for the corner lot; that he, Donovan, knew that he had a lien on it, and he proposed to hold it; that he paid about $2000 for Crowley. He also claims that Dwyer wished to oust Crowley, and took the ejectment proceedings for that purpose, and secured the forfeiture of the contract by the company in the interest of the security which he held, and with a view of cutting off the rights of Crowley under the contract he had made with the parties; and while he was unwilling to do this, he was willing to pay his pro rata share of all. moneys to be advanced to save the title to the land purchased of Crowley, and preserve their security therefor in the corner lot.

The main question in the case is one of fact, and the witnesses are not numerous. I have read with careful attention all the testimony contained in the record, which it is unnecessary herein to discuss, and from that and the conceded facts, I find myself unable to agree in the conclusion reached by the learned circuit judge. If the evidence in the case rested upon the testimony alone given by the witnesses, I should be unwilling to disturb the decree made, but the undisputed facts, together with the circumstances in the case, I think, furnish a preponderance of evidence in favor of the complainant, and the decree should be

Reversed and a new decree entered in the case in accordance with the prayer of the complainant's bill, with costs.

COOLEY, C. J. and CAMPBELL, J. concurred.